**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN SCHLINK, individually and on behalf of all similarly-situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 15 C 5894 |
| FIRE KING INTERNATIONAL, INC., d/b/a FIRE KING SECURITY GROUP | ) ) ) | Magistrate Judge Sidney Schenkier (By Consent) |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
<u>SETTLEMENT AND FOR CLASS CERTIFICATION</u>**

Attorneys for Plaintiff Susan Schlink and the proposed Class of Similarly Situated Persons:

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
Patrick Cowlin, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Street, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org
patrick@potterlaw.org

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . .  1

II.     STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

        a.      Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

        b.      The Parties Thoroughly Investigated the Case . . . . . . . . . . . . . . .. . . . . . . .  2

III.    THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

        a.      The Proposed Settlement Class and Class Period . . . . . . . . . . . . . . . . . . .  3

        b.      Payments to Class Members and Class Representative
                Enhancement Payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

        c.      Settlement Administration and Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

        d.      Attorneys' Fees and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . .  6

IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL
        AND PROVISIONALLY CERTIFY THE SETTLEMENT CLASS . . . .. . . . . . .  7

        a.      Settlement and Class Action Approval Process . . . . . . . . . . . . . . . . . . . . .  7

        b.      The Criteria for Preliminary Settlement Approval Are Satisfied. . . . . . . .  9

                1.      Strength of Plaintiffs' Case As Compared
                        to the Amount of the Settlement and Allocation
                        of the Settlement Payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

                2.      Complexity, Length, and Expense of Further Litigation. . . . . . . .  11

                3.      There Is No Opposition To The Settlement. . . . . . . . . . . . . . . . . .  12

                4.      Opinion of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

                5.      The Stage of the Proceedings and Discovery Completed . . . . . . . .  13

                6.      The Settlement Was the Result of Arm's Length
                        Negotiations Without Any Hint of Collusion . . . . . . . . . . . . . . . .  13

c.     Provisional Certification of the Settlement Class is Appropriate . . . . . . . . .13

1.     The Requirement of Numerosity is Met . . . . . . . . . . . . . . . . . . . . . . 15

2.     These Issues Meet the Commonality Requirements . . . . . . . . . . . . 16

3.     The Issues Meet the Typicality Requirements . . . . . . . . . . . . . . . . 17

4.     Adequacy of Representation is Satisfied . . . . . . . . . . . . . . . . . . . . . 18

5.     Rule 23(b)(3) is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

d.     The Parties' Proposed Notice Program . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

e.     Scheduling Final Approval Hearings Is Appropriate . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

*Arango v. GC Services, LP, et al.,* No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124
(N.D. Ill. June 10, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Bell v. PNC Bank, N.A.*, 800 F.3d 360 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 17

*Berenson v. Fanueil Hall Marketplace,* 671 F. Supp. 819 (D. Mass. 1987) . . . . . . . . . . . . 13

*Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330 (N.D. Ill. 2009) . . . . . . . . . .15

*Berger v. Xerox Corp. Ret. Income Guar. Plan,* No. 00-584-DRH,
2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004) . . . . . . . . . . . . . . . . . . . . . . .5

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 7, 8

*Cook v. McCarron,* No. 92 C 7042, 1997 U.S. Dist. LEXIS 1090
(N.D. Ill. Jan. 22, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752; 892 N.E.2d 78;
322 Ill. Dec. 831 (1st Dist. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225 (7th Cir. 1983) . . . . . . . . . . . . . . . 17

*Doe v. Guardian Life Ins. Co. of Am.,* 145 F.R.D. 466 (N.D. Ill. 1992). . . . . . . . . . . . . . 15

*EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884 (7th Cir. 1985). . . . . . . . . . . . . . . . .  10

*Gaspar v. Linvatec Corp.,* 167 F.R.D. 51 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . .15, 16,
17

*Gautreaux v. Pierce,* 690 F.2d 616 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers,*
212 F.R.D. 400, 410 (E.D. Wis. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Grove v. Principal Mutual Life Ins. Co.,* 200 F.R.D. 434, 445 (S.D. Iowa 2001). . . . . . . .  12

*Haschak v. Fox & Hound*, No. 10 C 8023, 2012 U.S. Dist. LEXIS 162476
(N.D.Ill. Nov. 14, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Heekin v. Anthem, Inc.,* No. 1:05-cv-01908-TWP-TAB; 2012 U.S. Dist. LEXIS 165464
(S.D.Ind. 11/20/12) . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130
(N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*In re Mexico Money Transfer Litigation,* 164 F. Supp. 2d 1002 (N.D. Ill. 2000). . . . . . . . . 11, 12,
13

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 11

*Johns v. DeLeonardis,* 145 F.R.D. 480 (N.D. Ill. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18

*Ladegaard v. Hard Rock Concrete Cutters,* No. 00 C 5755,
2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Dec. 1, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . .15, 18

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677 (7th Cir. 1987) . . . . 10

*Martens v. Smith Barney, Inc.,* 181 F.R.D. 243 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . 18

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.,* 762 F.2d 1093, 1106 (D.C. Cir. 1985) . . . . . . . 8

*Petrovic v. Amoco Oil Co.,* 200 F.3d 1140 (8th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12 (1985). . . . . . . . . . . . . . . . . . . . . . 20

*Reed v. General Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . 11

*Retired Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) . . . . . . . . . . . . . . . . . 17

*Riordan v. Smith Barney,* 113 F.R.D. 60, 65 (N.D. Ill 1986). . . . . . . . . . . . . . . . . . . . . . . . 19

*Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . .. . . .14, 16,
17

*Schmidt v. Smith & Wollensky LLC,* 268 F.R.D. 323 (N.D. Ill. 2010) . . . . . . . . . . . . . . . . 5, 15
18

*Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181 (N.D. Ill 1992). . . . . . . . . . . . . . . 19

*Swanson v. Am. Consumer Indus.,* 415 F.2d 1326 (7th Cir. 1966). . . . . . . . . . . . . . . . . . . 15, 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646 (7th Cir. 2006). . . . . . . . . . 8

*Villanueva v. Davis Bancorp, Inc.,* No. 09 C 7826, 2011 U.S. Dist. LEXIS 74089
(N.D. Ill. July 8, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wal-Mart Stores, Inc., v. Dukes,* 131 S. Ct. 2541 (2011). . . . . . . . . . . . . . . . . . . . . . . 16

*Walker v. Bankers Life & Cas. Co.,* 06 C 6906,
2007 U.S. Dist. LEXIS 73502 (N.D. Ill. 10/1/07) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Williams-Green v. J. Alexander's Rests., Inc.,* No. 09 C 5707,
2011 U.S. Dist. LEXIS 99373 (N.D. Ill September 1, 2011) . . . . . . . . . . . . . . . . . . . . . 18

*Winston v. Speybroeck,* No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131
(N.D. Ind. Aug. 2, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Yon v. Positive Connections, Inc.,* No. 04 C 2680,
2005 U.S. Dist. LEXIS 3396 (N.D. Ill. Feb. 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . .16

**STATUTES**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq* . . . . . . . . . . . . . . . . . . . . *passim*

Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq* . . . . . . . . . .*passim*

**RULES**

Fed.R.Civ.P. Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

**TREATISES**

2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions (3d ed. 1992) . . . . . . . .9, 10

Manual for Complex Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 16
                                                                                                  24

## I.     INTRODUCTION

Named Plaintiff Susan Schlink (hereafter, "Ms. Schlink") filed this action on behalf of herself and all other persons similarly situated, against the Defendant Fire King International, Inc., D/B/A Fire King Security Group (hereinafter "Defendant" or "Fire King"). Ms. Schlink worked for Defendant as a Customer Support Representative ("CSR") approximately 2005 until 2015.  In this action, Ms. Schlink has alleged that Defendant violated the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*, by mis-classifying her and other CSR's as exempt employees until January 2015.  Ms. Schlink has further alleged that after Defendant re-classified CSR's as hourly-paid, non-exempt employees in January 2015, it failed to include commissions in computing overtime, also in violation of the IMWL and FLSA.

Following a mediation session with His Honor Magistrate Judge Schenkier, the Parties reached a compromise on the claims asserted in the Lawsuit. Plaintiff now moves this Court for an order preliminarily (1) approving the Parties' stipulation of settlement, (2) approving the form and manner of class notice, (3) certifying this matter as a class action, (4) scheduling a Fairness Hearing for final approval of the settlement, and (5) entering the order attached as Exhibit 1.  In further support of this Motion, Plaintiff states as follows:

## II.     STATEMENT OF THE FACTS

### a.     *Procedural Background*

On July 2, 2015, Named Plaintiff Susan Schlink filed this Action in the United States District Court for the Northern District of Illinois, Eastern Division, on behalf of herself and others similarly situated. Ex. 2, attached hereto, Affidavit of M. Nieves Bolaños, at ¶2. On November 6, 2015, the

Parties issued an Agreed Notice of the collective action pursuant to section 216(b) of the FLSA. Ex. 2, ¶3. Subsequently, two persons opted into the suit: Elizabeth Tyler and Amos Dortch. Dkts. 28 and 29; Ex. 2, ¶3.

Defendant filed its Answer to the Complaint on October 2, 2015. Dkt. 21. In its Answer, Defendant acknowledged that it classified CSR's as exempt from the FLSA and IMWL until January 1, 2016 and did not pay them overtime premiums during such period of time. *Id.*, at ¶¶6-7. Defendant denied that the "exempt" classification was unlawful. *Id.,* Affirmative Defense Nos. 2 and 3. Defendant further admitted that it failed to include commissions in CSR's overtime rates after January 2015. *Id.*, ¶33.

      b.     *The Parties Thoroughly Investigated the Case*

Following the filing of the Complaint and Answer, the Parties discussed the prospect for early settlement discussions and alternative dispute resolution. Ex. 2, ¶5. In light of these discussions, Judge Coleman set a settlement conference with Magistrate Judge Schenkier. Dkt. 36, Order, June 29, 2016. Between March and May of 2016, Defendant produced payroll and timekeeping data for the putative class members, including dates of employment, salary and changes thereto, weeks worked, and benefit time taken for the period of July 2, 2012 and December 1, 2015. Ex. 2, ¶5. Plaintiff's counsel reviewed and analyzed that information, and created a class-wide damages analysis for the two claims described above. Ex. 2, ¶5.

On June 15, 2015, Plaintiff's counsel issued a class-wide written settlement demand and position statement. Pursuant to Magistrate Judge Schenkier's Standing Order governing Settlement Conferences and his Order of June 29, 2016, the Parties exchanged additional settlement proposals on July 12, 15 and 29, 2016, respectively. Dkt. 36; Ex. 2, ¶6. On August 16, 2016, the Parties

conducted a mediation settlement conference before His Honor which lasted more than five hours. Ex. 2, ¶6. The Parties were successful in reaching resolution of the class-wide claims on that date. Ex. 2, ¶6.

### III. THE PROPOSED SETTLEMENT

The details of the Settlement are contained in the Joint Stipulation of Settlement and Agreement to Settle Class Action Claims ("Settlement Agreement"), a copy of which is attached as Attachment A to Ms. Bolaños' Declaration (Ex. 2). For purposes of preliminary approval, the following summarizes the Settlement Agreement's key terms.

*a.* *The Proposed Settlement Class and Class Period*

The Parties ask that the Court certify a class composed of:

All persons who have been employed by FKI Security Group, LLC (a.k.a. FireKing International and/or FireKing Security Group) or their predecessors, successors or assigns as Customer Service Representatives, or in other similar job positions at any FireKing location and at any time from July 2, 2012 through and including the present, and who were not paid wages for overtime worked over and above their set regular salaries and/or who have not been paid proper overtime rates of pay for all time worked over 40 hours in individual work weeks and who are listed on Exhibit A [to the Settlement Agreement].

The Settlement Agreement identifies the individuals who are members of the Settlement Class. Ex. 2 Attachment A (Stipulation of Settlement); Exhibit A to Settlement Agreement.

*b.* *Payments to Class Members and Class Representative Enhancement Payment.*

Each Class Member's *pro rata* settlement share will be calculated as set forth in Section IV.8 of the Settlement Agreement. Class Members' estimated payments are listed in Exhibit A of the Settlement Agreement. Each Class Member will receive a Short Form Notice document that

will identify the approximate amount they will be paid from the Settlement Fund[1]. Each Class Member will have an opportunity to object to or opt-out of the Settlement.

The Settlement Agreement provides that Class Members do not need to submit a claim form to receive monetary benefits from the Settlement Fund. Class Members who do not exclude themselves from the settlement will not need to take any affirmative action to receive their share of the Settlement Fund. Class Members will have one-hundred eighty (180) days after the mailing of the settlement checks to cash their checks. If a check remains uncashed one-hundred eighty (180) days after it is mailed, the amount of such Settlement payments will be reported and remitted as unclaimed property to the State Treasurer for the State of Illinois, as outlined in the Uniform Disposition of Unclaimed Property Act, 765 ILCS 1025/0.05, et. seq. and pursuant to Section IV.8 of the Settlement Agreement.

The Settlement Agreement also contemplates an enhancement payment of ten thousand dollars ($10,000.00) to the Class Representative, Ms. Schlink, to acknowledge her service to the class. Ex. 2, ¶10. This payment is in addition to the payment that she shall receive as her *pro rata* share of the Settlement Fund. Ex. 2, ¶10. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Recent decisions in this

---

[1]A copy of the proposed Short Form Notice is attached as Exhibit B to the Settlement Agreement. A copy of the proposed Complete Notice is attached as Exhibit C to the Settlement Agreement.

Circuit have approved comparable incentive awards. *Balonek et al v. Safeway, et al.*, 1:14-cv-01457 (N.D.Ill.), Dkt. 58, Mem.Op. 2/12/15, at ¶7 (approving enhancement payment of $10,000 for each class representative in wage and hour suit); ; *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752 (N.D. Ill) (Dkt. #78, ¶5) (awarding $10,000 incentive award in Illinois Minimum Wage Law case); *Arango v. Landrys*, 1:12-cv-09354, (N.D.Ill.) Dkt. 250, Mem. Op. 8/27/15, at ¶7 (approving enhancement payment of $7,500 for each class representative in wage and hour suit)*; Berger v. Xerox Corp. Ret. Income Guar. Plan,* No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004)*; Heekin v. Anthem, Inc.,* No. 1:05-cv-01908-TWP-TAB; 2012 U.S. Dist. LEXIS 165464 at *5 (S.D.Ind. 11/20/12).

In this case, Ms. Schlink was responsible for initiating and maintaining this action. She participated in the case, provided documents and information regarding the merits of the claims, helped Plaintiff's Counsel prepare the settlement demand and damages model, attended the mediation, and performed everything that was asked of her. Ex. 2, ¶11. Without the efforts of Ms. Schlink, this case would not have been filed and this class action settlement would not have been achieved. Ex. 2, ¶11. As a result of these efforts and the result achieved, the requested incentive payment is well justified.

 c. *Settlement Administration and Notice*

The Parties have agreed that Defendant (or at its option, a third-party administrator) will perform the duties of Settlement Administrator, with the assistance of Class Counsel. All costs of settlement administration shall be paid by the Defendant separate from and in addition to the Settlement Fund. Defendant will pay the employer's required portion of payroll taxes and will prepare and mail the required tax forms to each Class Member and counsel. Defendant and/or the

Settlement Administrator will provide class counsel with a copy of all checks and a certification of payments made, all at Defendant's expense and outside of the Settlement Fund. Defendant and/or the Settlement Administrator will: (1) issue Class Notice forms returnable to Plaintiff's Counsel; (2) conduct one skip-trace for each notice returned as undeliverable and informing Plaintiff's Counsel of the results; and (3) issue Settlement Payments to class members.

The Parties' proposed notice program includes the following: (1) a Short-Form Notice (Ex. B to the Stipulation of Settlement); and (2) a Long-Form Notice (Exhibit C to the Stipulation of Settlement) upon request. The notice program provides that all Class Members will receive the Short-Form Notice by first-class mail, with a number of avenues thereafter to obtain additional information, including the Long Form Notice and/or copies of the complete Settlement Agreement. Defendant and/or the Class Administrator shall conduct additional mailing(s) for any Class Member whose Summary Notice is returned as undeliverable, to the extent that a forwarding address is provided by the U.S. Postal Service or otherwise located by skip trace or by Plaintiff's Counsel during the settlement period.

While in an abbreviated form, the Short-Form Notice includes all essential information about the lawsuit required under Rule 23, including the persons affected, class definitions, the nature of the action, the possibility of, and method for, opting-out, along with a description of the various methods of obtaining additional information and obtaining a copy of the Long-Form Notice. Class Members seeking information beyond the essential details can request such information by contacting Class Counsel.

        *d.*     *Attorneys' Fees and Costs*

The Settlement Agreement provides that Class Counsel will file a motion for final approval of this Settlement and seek approval for the payment of attorneys' fees and costs no later than ten (10) days prior to the Final Approval Hearing. Under the Agreement, Class Counsel may seek attorneys' fees and costs not to exceed $40,000. This figure is less than thirty-percent of the $136,000 settlement fund. The requested attorneys fee is within the market range for wage and hour cases in Chicago, and is reasonable based on the significant time required to achieve the settlement in this case and the excellent results achieved. Ex. 2, ¶¶12-17.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND PROVISIONALLY CERTIFY THE SETTLEMENT CLASS

        a.     *Settlement and Class Action Approval Process*

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Manual for Complex Lit., at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. See 2 Newberg & Conte, at § 11.22, et seq.

With this Motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. Id., § 11.25 at 11-36, 11-37.

The decision to approve a proposed settlement is committed to the Court's sound discretion. See *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.,* 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion). During the preliminary approval stage, the

district court decides whether the proposed settlement falls "within the range of possible approval." *Cook v. McCarron,* No. 92 C 7042, 1997 U.S. Dist. LEXIS 1090, at *24-25 (N.D.Ill. Jan. 22, 1997) (citation omitted). If so, the court should grant preliminary approval of the settlement, authorize the parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

   b. *The Criteria for Preliminary Settlement Approval Are Satisfied.*

  A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653; *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers,* 212 F.R.D. 400, 410 (E.D. Wis. 2002). The parties' settlement meets all these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25.

       1.     *Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment*

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendants' offer. See *Isby,* 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to approve the Settlement, this Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiffs' claims. See *id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker & Sons, Inc.,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The consideration to be paid by Defendants to the Class here is considerable and the plan of allocation is reasonable. See, Settlement Agreement, Section IV.8.(c). The Settlement Fund provides for $86,000 to be paid to the thirty-seven (37) Class Members as unpaid overtime wages, liquidated damages (for the named Plaintiff and two Plaintiffs who filed consents to join the suit) and interest awards for all Class Members, irrespective of whether they "opted in." Ex. 2, ¶19. Each class member will receive 1.88 hours of overtime, computed pursuant to the Fluctuating Workweek method[2], for each full week of employment between July 2, 2012 and December 31, 2014. Ex. 2, ¶20. This allocation is reasonable. After January 2015, Defendant classified CSR's

---

      [2]*Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010).

as hourly-paid employees and began tracking their work-time. Timekeeping records for this time period were produced to Plaintiff in discovery and reflect that CSR's worked, on average, approximately 1.88 hours of overtime per full workweek. Ex. 2, ¶20.

Each class member will also receive overtime payments owed for overtime worked after January 1, 2015 that was paid at the incorrect rate. Ex. 2, ¶21. Plaintiff's Counsel estimate that the class will receive one-hundred percent of our estimated unpaid overtime wages available to them for the released claims. Ex. 2, ¶28. Additionally, the named Plaintiff and two class members who opted into the suit will receive liquidated damages (i.e., doubling), and every class member will receive about 72% of the IMWL's 2% per month penalty. 820 ILCS 105/12; 29 U.S.C. §216(b). Ex. 2, ¶22. Class Members do not need to submit a claim form to participate in the Settlement. Class Members who do not exclude themselves will receive a check for their ratable share of the Settlement Fund. This is an excellent result and provides class members full recovery of their estimated damages, plus additional penalties, without the risk and/or delay of trial. As such, the settlement amply satisfies the fair, reasonable and adequate standard.

2.    *Complexity, Length, and Expense of Further Litigation*

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation,* 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend the case. It is likely that some (if not all) of the class members will be required to answer Interrogatories and/or provide depositions. Further litigation would require depositions of Defendant's managers, human resource personnel and employees. Additional motion practice relating to discovery and dispositive motions would be certain. Plaintiff and the Class Members may also have been required to confront appeals. Additional

-11-

litigation would increase the expenses of this litigation but would not have reduced the risks the litigation held for the Class. See *Isby,* 75 F.3d at 1199; see also *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1019; *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers (In re Harnischfeger Indus., Inc.),* 212 F.R.D. 400, 409-10 (E.D. Wis. 2002). Accordingly, the remaining burden, expense, and risks for Plaintiff and the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense.

### 3.      There Is No Opposition To The Settlement

The class representative supports the settlement, as do Plaintiff's Counsel and Defendant. At this preliminary stage, Plaintiff's Counsel is unaware of any opposition to the settlement, which provides an excellent result to all class members. Ex. 2, ¶25.

### 4.      Opinion of Counsel

Plaintiff's Counsel are experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiff's Counsel's opinion, the Settlement is fair, reasonable and adequate. Ex. 2, ¶¶26-28. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. See *In re Mexico Money Transfer Litigation,* 164 F. Supp. 2d 1002, 1020 (N.D.Ill. 2000); *Reed v. General Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.,* 200 F.R.D. 434, 445 (S.D. Iowa 2001). Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and

weakness of the claims and value of the claims, the time costs and expense of protracted litigation, discovery, trial and appeals. The Settlement was only reached after the conclusion of a mediation session overseen by the Magistrate Judge and extensive negotiations.

     *5.*    *The Stage of the Proceedings and Discovery Completed*

As explained above, this class action was resolved only after Defendant produced the timekeeping and payroll records for the 37 Class Members; after the Parties engaged in an extensive mediation session with the Magistrate Judge; and, after extensive exchange of analyses relevant to damages and liability. The stage of litigation has advanced so that Plaintiff's Counsel could fairly and fully evaluate the value of the settlement.

     *6.*    *The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion*

The Settlement was the result of adversarial, arm's length negotiations. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1020. The Parties were able to settle this action only after they engaged in substantial discovery, as well as a vigorous and comprehensive vetting of the claims, and a mediation overseen by the Magistrate Judge. Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace,* 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck,* No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996).

c.      *Provisional Certification of the Settlement Class is Appropriate*

Provision Certification of the Settlement Class is appropriate in light of the fact that the Parties have reached an agreement, and the elements of class certification are met.  Plaintiff requests the Court issue an order which provides that notice of the proposed Settlement can be issued to the Settlement Class, so that Class Members will be informed of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing.  See Manual for Complex Lit. at §§ 21.632, 21.633.

A determination of class certification requires a two-step analysis.  Fed. R. Civ. P. 23(b); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992).  First, the plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class  must be so large that individual joinder is "impracticable"); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiff claims are typical of the class's claims); and (4) adequacy of representation (the class representative must be able to fairly and adequately protect class interests).  Fed. R. Civ. P. 23(a)(1) – (4).

Second, the action must qualify under one of the three subsections of Rule 23(b).  Fed. R. Civ. P. 23(b); *Rosario,* 963 F.2d at 1017; *Arango v. GC Services, LP, et al.,* No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124, at *3 (N.D. Ill. June 10, 1998).  Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making  appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting  individual

members, and the class action is superior to other available methods.  Fed. R. Civ. P. 23(b)(1) – (3).[3]

The claims raised  in  this  matter meet  each  of  the statutory requirements  for class treatment.

1.      <em>The Requirement of Numerosity is Met</em>

Rule 23(a)(1) requires a class large enough that the joinder of all members would be "impracticable."  Impracticability does not  mean  "impossibility," but only difficulty or inconvenience in joining all members of the class.  *Doe v. Guardian Life Ins. Co. of Am.,* 145 F.R.D. 466, 471 (N.D. Ill. 1992).  To determine whether joinder is impracticable, courts must consider the circumstances unique to each case.  *Swanson v. Am. Consumer Indus.,* 415 F.2d 1326, 1333 (7th Cir. 1966).  These circumstances include whether it is feasible for class members to bring individual suits and whether it is judicially efficient for the court to try such individual cases. *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D. Ill. 1996).  "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson,* 415 F.2d at 1333.

In this case, that threshold requirement is met. Defendant employed thirty-seven (37) CSR's during the Class Period who were subject to one or both of the practices at issue in this

---

[3]Illinois state and federal courts often have granted class certification of wage claims. See,  e.g., *Bell v. PNC Bank, N.A.*, 800 F.3d 360 (7th Cir. 2015) (affirming certification of class action where Plaintiffs alleged class was subject to unofficial policy or practice that required employees to work off-the-clock overtime hours); *Schmidt v. Smith & Wollensky LLC,* 268 F.R.D. 323 (N.D. Ill. 2010) (IMWL claims for overtime pay); *Williams-Green v. J. Alexander's Rests., Inc.,* No. 09 C 5707, 2011  U.S. Dist. LEXIS 99373 (N.D. Ill. September 1, 2011)(IMWL claims for minimum wages); *Villanueva v. Davis Bancorp, Inc.,* No. 09 C 7826, 2011 U.S. Dist. LEXIS 74089 (N.D. Ill. July 8, 2011)(IMWL claims for owed overtime pay); *Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330 (N.D. Ill. 2009) (IMWL claims for owed overtime pay); *Ladegaard v. Hard Rock Concrete Cutters,* No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Dec. 1, 2000) (certifying class of current and former employees who were not paid for all work time, including time spent attending mandatory safety meetings); *Cruz v. Unilock Chicago, Inc.,* 383 Ill. App. 3d 752; 892 N.E.2d 78; 322 Ill. Dec. 831 (1st Dist. 2008) (certifying IMWL and IWPCA class of plant employees who worked "off-the-clock," including at pre-shift meetings.).

suit. Attachment A (Stipulation of Settlement); Exhibit A (Class List). A class of this size satisfies the numerosity requirement found necessary in this District. *Swanson,* 415 F.2d at 1333 n.9 (noting that 40 class members would be sufficient); *Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 U.S. Dist. LEXIS 3396, at *5 (N.D. Ill. Feb. 2, 2005) (Darrah, J.) (certifying IMWL class for owed overtime pay where documents showed at 39 employees owed overtime pay); *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D. Ill. 1996) (finding 18 class members sufficient, and citing cases where certification was appropriate with classes as small as 13 to 20 members).

## 2.    *These Issues Meet the Commonality Requirements*

For a class to be certified, questions of law or fact must exist common to the class. Fed.R.Civ. P. 23(a)(2). To satisfy the commonality element, it is enough for plaintiffs to present just one common claim. *Wal-Mart Stores, Inc., v. Dukes,* 131 S.Ct. 2541 at 2556 (2011). Commonality is satisfied when a common nucleus of operative facts and common questions of law exist. *Rosario*, 963 F.2d at 1018. In other words, the claims must depend upon a common contention, capable of class-wide resolution. *Haschak v. Fox & Hound*, No. 10 C 8023, 2012 U.S. Dist. LEXIS 162476 *6 (N.D.Ill. Nov. 14, 2012). A common set of operative facts is usually present when defendants are claimed to have engaged in standardized conduct toward the members of the proposed class. *Keele,* 149 F.3d at 592. "Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Walker v. Bankers Life & Cas. Co.,* 2007 U.S. Dist. LEXIS 73502 (N.D. Ill. 10/1/07), *quoting Riordan v. Smith Barney,* 113 F.R.D. 60, 63 (N.D. Ill. 1986).

There is ample evidence of a common nucleus of operative facts and law for a class to be certified. Prior to January 2015, CSR's were uniformly classified as "exempt" employees, and

-16-

thus were paid on a salaried basis. After January 2015, CSR's were uniformly paid by the hour, and were paid overtime at a rate which did not include their earned commissions. See, 29 C.F.R. 778.117 (Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate.). Further, Plaintiff's Counsel calculated damages based on data from timekeeping and payroll records which were centrally maintained and processed by the Defendant. Thus, with respect to both these claims, Defendant engaged in standardized conduct toward the members of the proposed class. As such, these two practices present common factual and legal issues and satisfy the commonality element. *c.f., Bell v. PNC Bank, N.A.*, 800 F.3d 360 (7th Cir. 2015).

> ### 3. *The Issues Meet the Typicality Requirements*

The Rule 23(a)(3) requirement of typicality is met here as well. Claims of the class representative and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998); *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Typicality and commonality are closely akin. *Rosario,* 963 F.2d at 1018. "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D. Ill. 1996).

The claims of the Named Plaintiff and Class Members arise from the same actions of Defendants. Ms. Schlink worked for Defendant from approximately 2005 through 2015, and was impacted by both practices at issue in this suit. Thus, the claim arises from the same actions of Defendant. *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (typicality is

meant to insure that the claims of the class representative have the "same essential characteristics as the claims of the class at large.").

### 4.    Adequacy of Representation is Satisfied

To meet the adequacy of representation requirement, "the representative must be able to 'fairly and adequately protect the interests of the class.'" *Ladegard,* 2000 U.S. Dist. LEXIS 17832, *17, citing *Keele,* 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(4).  Meeting the burden of this requirement is "not difficult."  *Schmidt,* 268 F.R.D. at *327, *citing*, *Wahl v. Midland Credit Mgt.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007).  Under Rule 23(a)(4), the adequacy determination has two elements: the adequacy of plaintiff's counsel, and the adequacy of protecting the different, separate, and distinct interest of the class members.  *Ladegard,* 2000 U.S. Dist. LEXIS 17832, *17.  The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)(quoting *Krueger v. New York Tel. Co.,* 163 F.R.D. 433 (S.D.N.Y. 1995)).

Plaintiff's Counsel are experienced class action attorneys and have acted as representative counsel in numerous actions in federal and state courts, and will adequately protect the interests of the class.  Ex. 2, ¶31.  Similarly, Ms. Schlink has no antagonistic interests that go to the subject matter of the lawsuit.  She worked and was paid in the same manner as other Class Members, and has devoted substantial time and energy to fulfilling her duties as class representative and achieving this settlement for herself and the class.

### 5.    Rule 23(b)(3) is Satisfied

Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members,

and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The class certification requested here meets those standards. An action demonstrates a "predominance" of common questions where "the group for which certification is sought seeks to remedy a common legal grievance." *Riordan v. Smith Barney,* 113 F.R.D. 60, 65 (N.D. Ill 1986). The test is not whether resolution of "common issues" would be dispositive of the entire litigation. *Id.* Rather, as the court observed in *Johns v. DeLeonardis,* 145 F.R.D. 480, 484-85 (N.D. Ill. 1992):

> [Subsection (b)(3)] merely requires that the class claims have a dominant, central focus. Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?

For similar reasons set forth above with respect to commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3), there exist predominating common questions of fact and law, and the class members' claims arose from the same actions of Defendant as those which impacted the Named Plaintiff.

A class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. See *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially dozens of individual lawsuits and piecemeal litigation. Likewise, a class action is an appropriate method for the fair and efficient adjudication of the controversy between the class and the Defendant. In this proceeding, the Parties will be allowed to resolve the claims of 37 persons in one coordinated proceeding, thus conferring significant benefits upon each class member if their claims are deemed to have merit. Defendant will also benefit by being spared the expense and potential inconsistency of scores of individual lawsuits.

d.     *The Parties' Proposed Notice Program*

The notice protocol identified in the Settlement Agreement provides proper notice to affected individuals. Rule 23 (e)(1) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. Fed.R.Civ.P. Rule 23(e); Manual for Complex Lit. at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12 (1985).

Numerous courts within this District have approved the use of the short-form notice to provide notice to absent class members: *Arango v. Landrys*, 1:12-cv-09354, (N.D.Ill.) Dkt. 250, Mem. Op. 8/27/15, at ¶3; *Rosales v. Randstad*, No. 09 C 1706 (N.D. Ill. 2009) (Dkt. # 152, at ¶6); *Schmidt v. Smith & Wollensky, LLC,* Case No. 09 C 2752 (N.D. Ill. 2009) (Dkt. #73, at ¶3); *Arrez v. Kelly,* No. 07 C 1289 (N.D. Ill.) (Dkt. #158, at 7-18); *Driver v. AppleIllinois LLC,* Case No. 06 C 6149 (N.D. Ill.) (Dkt. #239). Judge Leinenweber approved the use of a short-form notice in the *Arrez* case, with a class of approximately 96,000 low-wage workers.

The principal reason that courts are approving notice procedures with short-form documents is comprehension and readability: Rule 23 requires that the court direct "best notice" that conveys the needed information "clearly and concisely in plain, easily understood language." Fed. R. Civ. P., 23(c)(2)(B). The short-form notice is more likely to be read by Class Members, and if read, more likely to be understood. The Parties' proposed notice procedure meets the requirements of Rule 23, and accordingly Plaintiff's request that the Court approve the Notice forms and protocol.

-20-

   *e.*      *Scheduling Final Approval Hearings Is Appropriate*

The last step in the Settlement approval process is a final fairness hearing at which the

Court may hear all evidence and argument necessary to make its  Settlement evaluation.

Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer

argument in support of final approval.  In addition, Class Members, or their counsel, may be

heard in support of or in opposition to the Settlement Agreement. The Court will determine after

the Final Approval Hearing whether the Settlement should be approved, and whether to enter a

Final Approval Order and judgment under Rule 23(e).  The Parties request that the Court set a

date for a hearing on final approval.

## CONCLUSION

**WHEREFORE,** for the reasons set forth above, the Court should grant the Motion for

Preliminary Approval of the Proposed Settlement, and issue the Order attached hereto as Exhibit 1.


                                        Respectfully submitted,

                                        s/ M. Nieves Bolaños
                                        One of Plaintiffs' Attorneys


Robin Potter, Esq.
M. Nieves Bolaños, Esq.
Patrick Cowlin, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Street, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org
patrick@potterlaw.org