# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN SCHLINK, individually and on behalf of all similarly-situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No.  15 C 5894 |
| v. | ) ) | Magistrate Judge Sidney Schenkier |
| FIRE KING INTERNATIONAL, INC., d/b/a FIRE KING SECURITY GROUP | ) ) ) | (By Consent) |
| Defendants. | ) ) ) | |

**DECLARATION OF M. NIEVES BOLANOS IN SUPPORT OF**
**PRELIMINARY APPROVAL OF SETTLEMENT**

1.      I am an attorney with the law firm Robin Potter & Associates, P.C. which

represents the Plaintiff, Susan Schlink and the proposed class in the above-captioned lawsuit.

My background and professional experience are set forth more fully below.

2.      On July 2, 2015, Susan Schlink filed this Action in the United States District

Court for the Northern District of Illinois, Eastern Division, on behalf of herself and others

similarly situated.  Ms. Schlink has alleged that Defendant violated the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS

105/1 *et seq*, by mis-classifying her and other Customer Support Representatives ("CSR's") as

exempt employees until January 2015.  Ms. Schlink further alleged that after Defendant re-

classified CSR's as hourly-paid, non-exempt employees in January 2015, it failed to include

commissions when it computed overtime, also in violation of the IMWL and FLSA.

3.      On November 6, 2015, the Parties issued an Agreed Notice of the collective

action pursuant to section 216(b) of the FLSA.  Subsequently, two persons opted into the suit:

Elizabeth Tyler and Amos Dortch.

4.     Defendant filed its Answer to the Complaint on October 2, 2015.  Dkt. 21.  In its Answer, Defendant acknowledged that it classified CSR's as exempt from the FLSA and IMWL until January 1, 2016 and did not pay them overtime premiums during such period of time. Defendant denied that the "exempt" classification was unlawful.  Defendant also admitted that it failed to include commissions in CSR's overtime rates after January 2015.

5.     Following the filing of the Complaint and Answer, the Parties discussed the prospect for early settlement discussions and alternative dispute resolution.  In light of these discussions, the Court set a settlement conference with the Honorable Magistrate Judge Sidney I. Schenkier.  Between March and May of 2016, Defendant produced payroll and timekeeping data for the putative class members, including dates of employment, salary and changes thereto, weeks worked, and benefit time taken for the period of July 2, 2012 and December 1, 2015. Plaintiff's counsel reviewed and analyzed that information, and created a class-wide damages analysis for the two claims described above.

6.     On June 15, 2015, Plaintiff's counsel issued a class-wide written settlement demand and position statement. Pursuant to Magistrate Judge Schenkier's Standing Order governing Settlement Conferences and his Order of June 29, 2016, the Parties exchanged additional settlement proposals on July 12, 15 and 29, 2016, respectively.  On August 16, 2016, the Parties conducted a mediation settlement conference before His Honor Magistrate Judge Schenkier which lasted more than five hours.  The Parties were successful in reaching resolution of the class-wide claims on that date.

7.      The proposed Settlement Agreement is attached to this Declaration as Attachment

A.  Exhibit A to the Settlement Agreement identifies the individuals who are members of the

Settlement Class.

8.      Each Class Member's *pro rata* settlement share will be calculated as set forth in

Section  IV.8 of the Settlement Agreement. Class Members' estimated payments are listed in

Exhibit A of the  Settlement  Agreement.  Each  Class Member will receive a Short Form Notice

document that will identify the approximate amount they will be paid  from  the  Settlement

Fund[1] (Section IV.13 of the Settlement Agreement).  Each Class  Member  will have an

opportunity to object to or opt-out of the Settlement.

9.      The Settlement Agreement provides that Class Members do not need to submit a

claim form to receive monetary benefits from the Settlement Fund. Class Members who do not

exclude themselves from the settlement will not need to take any affirmative action to receive

their share of the  Settlement Fund. Class  Members will have one-hundred eighty (180) days

after  the mailing of the settlement checks to cash their checks.  If a check remains uncashed one-

hundred eighty (180) days after it is mailed, the amount of such Settlement payment will be

reported and remitted as unclaimed property to the State Treasurer for the State of Illinois, as

outlined in the Uniform Disposition of Unclaimed Property Act, 765 ILCS 1025/0.05, et. seq.

and pursuant to Section IV.8 of the Settlement Agreement. Defendant will inform Class Counsel

of any funds so remitted to the State of Illinois.

---

[1]A copy of the proposed Short Form Notice is attached as Exhibit B to the Settlement
Agreement.  A copy of the proposed Complete Notice is attached as Exhibit C to the Settlement
Agreement.

10.     The Settlement  Agreement contemplates an enhancement  payment of ten thousand dollars  ($10,000.00) to  the  Class Representative, Ms. Schlink, to acknowledge her service to  the class.  This payment is in addition to the payment that she shall receive as her *pro rata* share of the Settlement Fund.

11.     Ms. Schlink was responsible for initiating and maintaining this action.  She participated  in  the case, provided documents and information regarding the merits of the claims, helped Plaintiff's Counsel prepare the settlement demand and damages model, attended the mediation,  and performed everything that was asked of her. Without the efforts of Ms. Schlink, this case would not have been filed and this class action settlement would not have been achieved.

12.     The Settlement Agreement provides that Class Counsel will file a motion for final approval of this Settlement and seek approval for the payment of attorneys' fees and costs no later than ten (10) days prior to the Final Approval Hearing.

13.     Under the Agreement, Class Counsel may seek attorneys' fees and costs not  to exceed $40,000.  This figure is less than thirty-percent of the $136,000 settlement fund.

14.     In my opinion, this requested attorneys fee is within the market range for wage and hour cases in Chicago, and is reasonable based on the amount of time required to achieve the settlement in this case and the excellent results achieved.

15.     Consistent with the market for Chicago legal services, Class Counsel agreed to litigate this case on a forty-percent (40%) contingency fee basis, as evidenced by the initial retainer agreement executed with Ms. Schlink.

4

16.     As set forth in the Appendix below, my firm has substantial experience in prosecuting large-scale wage and hour class and collective actions.  We routinely negotiate contingency fee compensation rates at 40% in cases such as this one.

17.     Plaintiff's Counsel undertook considerable risk in taking this case.  My Firm was fully prepared to prosecute and finance this litigation for as long as necessary, with the very real possibility that it would come away with nothing.

18.     Plaintiff's Counsel computed and allocated damages to individual class members as follows.

19.     The Settlement Fund provides for $86,000 to be paid to the thirty-seven (37) Class Members as unpaid overtime wages, liquidated damages (for the two Plaintiffs who filed consents to join the suit) and interest awards for all Class Members, irrespective of whether they "opted in."

20.     Each class member will receive 1.88 hours of overtime, computed pursuant to the Fluctuating Workweek method[2], for each full week of employment between July 2, 2012 and December 31, 2014.  Timekeeping records reflect CSR's worked, on average, approximately 1.88 hours of overtime per full workweek, after January 2015, once Defendant began tracking time.

21.     Further, each class member will receive additional overtime payments owed for overtime worked after January 1, 2015 that was paid at the incorrect rate.  Plaintiff's counsel extrapolated damages for the period after December 2015 based on the records which were produced by Defendant for the period of January - December, 2015.

---

[2] *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010).

22.     The two class members who opted into the suit and the Named Plaintiff will receive liquidated damages (i.e., doubling). 29 U.S.C. 216(b). Each class member (including the two persons who opted in and the Named Plaintiff) will also receive approximately 72% of the 2% per month penalty provided by the IMWL. 820 ILCS 105/12.

23.     Class Members who do not exclude themselves will receive a check for their ratable share of the Settlement Fund. This is an excellent result and provides class members full recovery of their estimated damages, plus additional penalties, without the risk and/or delay of trial.

24.     Plaintiff's Counsel has gained comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses. Based on our knowledge of the case and the applicable law, as well as our experience in other large class actions, Plaintiff's Counsel believes the settlement is fair, reasonable and adequate.

25.     Ms. Schlink supports the settlement. At this preliminary stage, Plaintiff's Counsel is unaware of any opposition to the settlement, which provides an excellent result to all class members.

26.     It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this Settlement by Plaintiff's Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims, the time costs and expense of protracted litigation, discovery and trial and appeals. The settlement was reached only after a mediation session with the Magistrate Judge, and extensive negotiations subsequent thereto.

27.     Plaintiff's Counsel based our assessment of the settlement on our review of the timekeeping and payroll records and other documents produced, our interviews with the Plaintiff, our damages model, Defendant's Answer to the Complaint, its position statement and the extensive settlement discussions regarding damages and liability.

28.     Based on the above-described damages analysis, Plaintiff's Counsel estimate that the class will receive one-hundred percent of our estimated unpaid overtime wages available to them for the released claims plus an additional amount in penalties, as described above, without the burden of trial or further litigation.  As such, the undersigned believes this is an excellent result.

29.     Class actions of this type are, by their nature, complicated and time consuming. Any lawyer undertaking representation of a class of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  The demands and risks of this type of litigation overwhelm the resources – and deter participation – of many traditional claimants' firms.

30.     Plaintiff could not have afforded to retain counsel on any basis other than a contingent fee basis.  Plaintiff's Counsel would receive nothing if they ultimately failed to secure a monetary recovery for Plaintiff and the Class.  Plaintiff's Counsel took the risk that they would obtain no recovery at all.  Plaintiff's Counsel was prepared to prosecute and finance this litigation for as long as necessary, with the possibility that they would come away with nothing.

31. Plaintiff's Counsel have and will continue to fairly and adequately protect the interests of the class. Plaintiff's Counsel are highly experienced and are recognized attorneys in wage and hour law and employment litigation and have been designated class counsel in numerous class and collective actions under the FLSA and IMWL.

32. Plaintiff's Counsel have exceeded expectations in this case securing an excellent settlement and avoiding the risks of trial.

33. The parties did not consider Defendant's ability to pay a judgment or settlement as a factor in the settlement.

34. The fact that a significant monetary recovery is available to class members without the uncertainty of trial and is being delivered through this settlement rather than after substantial further litigation qualifies this settlement as a favorable result.

35. I base the above opinions regarding the adequacy of the settlement on my expertise and experience, and that of my Firm, which is summarized as follows.

36. I base the above opinions regarding the adequacy of the settlement on my expertise and experience, and that of my Firm, which is summarized as follows.

37. I graduated from the DePaul University College of Law in Chicago, Illinois in May 2009. I received my undergraduate degree from the University of Washington, Seattle.

38. I am admitted to practice in the State of Illinois since November 2009 and before the United States District Court for the Northern District of Illinois since January 2010.

39. My Firm, Robin Potter & Associates, P.C., has represented Plaintiffs in employment and wage and hour cases for more than thirty-five years. Robin Potter, the Firm's Principal, is a nationally-renowned practitioner. See *Arango et al. v. Landrys*, No 12-cv-09354

8

(N.D.Ill.) (ECF No. 244-3, at Pages 25-34, Declaration from Ms. Potter describing her experience and the Firm's history, and setting forth a representative sample of cases).

40.     I am a member of the National Employment Lawyers Association (NELA), a nation-wide bar association of attorneys who represent plaintiffs-employees in employment and wage and hour cases.  I am also an active member of NELA-Illinois, NELA's Illinois affiliate.

41.     In June 2015, I was appointed to the Executive Board of the National Employment Lawyers Association for a three-year term.  The Executive Board is NELA's highest governing body, and includes preeminent employment law practitioners from jurisdictions throughout the country.

42.     I have also served as a committee-member of NELA's Annual Convention Committee, Low Wage Worker Committee and  Diversity, Equity & Inclusion Committee. I was one of two co-Chairs of the 2016 NELA Annual Convention held in Los Angeles, California.

43.     I serve on the Labor and Employment committee of the Chicago chapter of the National Lawyers Guild.

44.     I am a member of the Chicago Bar Association ("CBA"), and have been a panelist on Wage and Hour issues for its Young Lawyer's Committee.

45.     I was a volunteer with Interfaith Worker Justice Coalition in a pilot program, developed in concert with the Illinois Department of Labor and the Center for Economic Progress, to provide consultation regarding potential wage and hour violations through volunteer tax preparation sites.

46.     I am a member of Taxpayers Against Fraud ("TAF"), an organization of attorneys representing *qui tam* relators, and have attended numerous educational seminars and events

9

sponsored by TAF throughout my career, including its annual convention in Washington D.C.

47.     I frequently lecture to bar association groups on various topics, including employment law, wage and hour litigation, and the representation of low wage workers.  In February 2013, I was one of three panelists to present on Electronically Stored Information (ESI) and social media issues in employment litigation at NELA-Illinois' Annual 7th Circuit Conference.  In October 2013, I spoke before the Chicago Bar Association Young Lawyers Section, on its *Wage and Hour Updates* panel.  In February 2015 I spoke on a panel regarding summary judgment motion practice for NELA-Illinois' Seventh Circuit Conference.  In June 2015, I spoke on a panel titled *Strategies for Handling Post-Settlement Setbacks* for the NELA National Annual Convention.  In June 2016, I spoke on a panel titled *Successfully Representing Undocumented Workers* for the NELA Annual Convention.  In October 2016, I am scheduled to speak at NELA's Fall Seminar regarding Summary Judgment.

48.     In 2015 and 2016, I served as a contributing author to *The Fair Labor Standards Act's Midwinter Treatise Supplement*, Ellen C. Kearns. This publication is widely recognized as the leading wage and hour treatise for wage and hour practitioners in both the Plaintiff and Defense bars.

49.     During my career, I have successfully represented single plaintiffs and employees in class and collective actions at all stages of litigation in state and federal courts in Illinois.  I have also represented employees in administrative agencies, including the Equal Employment Opportunity Commission, the Illinois Department of Human Rights, and the Illinois Education Labor Relations Board. I have also represented plaintiffs in private arbitrations.

10

50.     At the present time, my practice is highly concentrated in representing employees in cases arising under federal and state wage and hour laws, including the FLSA, IMWL and IWPCA.  The following is a representative sample of wage and hour cases in which I have been appointed and/or served as counsel:  *Daniels et al v. Rush University Medical Center et al.*, No. 1:15-cv-03882 (N.D.Ill.) (Collective action on behalf of medical coders for unpaid overtime; $225,000 settlement with payment of 1/3 of fund in attorneys fees and costs); *Arango et al. v. Landrys*, No 12-cv-09354 (N.D.Ill.) (Class action certified under the FLSA, IWML and IWPCA on behalf of servers, bar tenders and hosts nation-wide for off the clock work, illegal tip pool violations, and failure to reimburse for uniform expenses; $2,527,500 settlement, including $750,000 attorneys fees award); *Balonek et al v. Safeway et al.*, No. 14-cv-01457 (N.D.Ill.) (Class action settlement under FLSA and IMWL for $1.7 million on behalf of General Merchandise Managers and Assistant General Merchandise managers who worked in Illinois at Dominick's Stores; $450,000 attorneys fees); *Silva et al. v. Sabatino's, Inc.,* No. 10 C 4226 (N.D. Ill.) (Rule 23 class action under the IMWL and IWPCA, and FLSA collective action, certified in wage and hour case alleging off the clock work by restaurant employees; class-wide settlement of $500,000, including attorneys fees and costs in the amount of $202,421.32); *Cruz v. Unilock Chicago, Inc.*, Case No. 05 CH 259 (Ill. Cir. Ct. 1ˢᵗ Dist.) (certified class of 300 plant employees under IMWL and IWPCA; class-wide settlement of $1,600,000).

51.     The following is a representative sample of labor and employment cases in which I have successfully represented Plaintiffs:  *Ferkel v. Board of Education*, No. 11-C-09322, 45 F.Supp.3d 824 (N.D.Ill. 2014) (Collective action conditionally certified under the Age Discrimination in Employment Act on behalf of six tenured teachers with related procedural due

process claim); *Mauldin v. Stroud et al.*, 14-cv-08341 (N.D.Ill.) (Kennelly, J.) (Individual case alleging sex harassment, discrimination, and unlawful retaliation; Confidential Settlement); *Chicago Teachers Union v. City of Chicago*, Grievance No. 4106/10-10-013 et al (6/9/14) (favorable arbitration decision, following evidentiary hearing, on behalf of seven tenured teachers who were improperly laid off during a reduction in force); *Coates v. Entertainment Cruises, Inc., et al.*, Case No. 11 C 1986 (N.D. Ill.) (Sex harassment, discrimination and retaliation claim; Confidential Settlement); *Chicago Teachers Union, Local No. 1, AFT v. Bd. of Educ. of Chi.*, Case No. 10 C 4852 (N.D. Ill.) (Due Process violation claim and request for injunctive relief; settled through labor contract negotiations); *Kelley v. Bd. of Educ. of Chi.*, Case No. 10 C 7875 (N.D. Ill.) (Due Process violation and age discrimination case on behalf of single plaintiff; settlement of $335,000).

52.     The following is a representative sample of cases in which I have successfully represented Plaintiffs and/or *qui tam* relators under the False Claims Act and related state laws: *U.S. ex rel Howard v. Urban,* No. 03 C 7668, 2013 U.S. Dist. LEXIS 127987 *11 (N.D.Ill. 9/9/13), *modified on other grounds,* 2014 U.S. Dist. LEXIS 28278 (N.D.Ill. 3/5/14) (Leinenweber, J.) (I successfully represented the Plaintiff at a jury trial in a retaliation case under the False Claims Act.); *U.S.A. ex rel. Kiefer v. Khokha*, No. 12-cv-01861 (N.D.Ill.) (Settlement reached); *U.S.A. ex rel. Lokesh Chandra, M.D. v. Sushil A. Sheth, M.D.,* Case No. 06 C 2191 (N.D. Ill.) (False Claims Act case; $20 million settlement with the United States government); *U.S.A. ex rel Perius v. Abbott Laboratories*, Case No. 07 C 1251 (N.D. Ill.) (Retaliation under the False Claims Act and related claims under Illinois law; Confidential Settlement). In addition, continue to represent whistleblowers and work with the federal and state government in other *qui*

12

*tam* litigation currently under seal.

53.    Based on this experience, I believe that the Settlement is fair, reasonable and adequate, and so represent to the Court.

Under penalties of perjury, as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, 735 ILCS 5/1-109, and 28 U.S.C. §1746 the undersigned certifies that the statements set forth in this declaration.

M. Nieves Bolaños

Dated:  September 30, 2016

13